Madam Clerk, would you please check in the lawyers for case number three? Mr. Foster? Here. Very good. Mr. Casserly? I'm here. And Mr. Taylor? Yes, I'm joined. A note for the panel. I initially indicated that Mr. Taylor, for the intervener, was going to defer his argument time to the NLRB. They are now dividing their time 11 minutes and four minutes. Very well. Please call the next case for argument. Oh, hold on. Hold on. I'm sorry, Madam Clerk. Before you do that, I cannot see Mr. Taylor. I see a box for him, but no video. If you have him pinned, you might want to unpin him and re-pin him. Sometimes that helps with the video. That helped. I can see him now. Okay. Please call the next case for argument. 19-3570 and 20-1057, Transdev Services v. National Labor Relations Board, et al. Very well. Mr. Foster, we'll hear from you first. May it please the Court, and may it please my opposing counsel, Mr. Casserly, and my good friend, Doug Taylor, who's there on behalf of the Intervener Union. This is a very simple case that involves a section of the National Labor Relations Act that gets spoken about and discussed many times called Section 211. I had the pleasure of working one time long ago when I came out of law school for the National Labor Relations Board for several years. And I was taught then, and I still recognize, that Section 211 is written in the disjunctive, not conjunctive. All a party, either party, union or the employer, needs to show is one element of Section 211 to establish a supervisor. They don't need to show every element, and they don't need to show every element plus a footnote. Now, in this case, it's our position that the evidence in the record and made a determination that was not supported by competent evidence. When the case was originally heard before the National Labor Relations Board, two road supervisors testified. And just by way of background, Transdev Services provides contract services so that paratransit transportation can occur in various municipalities and areas around the country. Transdev is a name of the current employer. The prior employers go all the way back to a company called Cromalloy, which I had the pleasure of representing before Judge Wollman in 1988 in a case called L.A. Water for the Eighth Circuit. At that time, it was called American Transit Corporation. Then it became ATC. Then it became Connex. Then it became ATC-Vancom again. Then it became Vancom. Then Connex once again. Then Veolia. And then Transdev. Today, this case arose in the operations that was contracted to the Washington Metropolitan Area Transit Administration, otherwise known as WMATA, in Washington, D.C. Transdev had a contract for providing approximately 600, 615 operators to drive paratransit vehicles to pick up passengers and deliver those passengers. There was approximately 12, 15 road supervisors. Of that group of road supervisors, two testified at the hearing. Road Supervisor Holtz, H-O-L-T-Z, and Road Supervisor Mr. Jackson. Both testified extensively about what they do, how they do it, when they do it, and what it means. And they provided extensive, unrebutted, uncontested testimony that they issue various actions and reports that are disciplinary in nature. The two union contracts to which they supervised, or to which employees are covered by, that are supervised by them, include both the Amalgamated Transit Union's contract, as well as a Teamster contract. There's two separate groups operating underneath both supervisors. In both of those union contracts, there's specific provisions that talk about an oral reprimand as the first start of a four-part disciplinary process. And that's the discipline. Mr. Jackson testified that he was called upon at one time by the employer to testify. This was unrebutted again. Testified at a discharge arbitration hearing because his report led to discharge of an operator. That testimony was uncontested, unrebutted. In addition to that, the parties had the opportunity to present evidence. The employer is the only one that presented evidence. And the regional director easily found that they were supervisors under the National Abolitions Act. Now, before I forget, we get into the weeds on this, our reply brief, I believe, was filed in May of this year. And there were two other cases that since then that I haven't had a chance to file a Rule 28 letter on. Why don't you file a letter then? It's not really that helpful to read citations to us. If you want to discuss the substance of the cases, I guess we can hear you on that, although we won't have read them because we didn't have notice. Understood. Both cases simply are similar cases where the National Labor Relations Board's on supervisory status has been given the appropriate scrutiny, just as this court does in Beverly. And both courts found that the individuals should be excluded, not covered as employees under the Act. All right. Well, would you send us a letter with those citations and then the board can reply if appropriate? Will do. Again, the evidence was undisputed that these road supervisors disciplined, they responsibly directed and rewarded those employees, and there was substantial evidence of what's called secondary indicia of their supervisory status. They drove their own unique cars that the operators couldn't drive. They had their own offices. They had their own desks. They had their own private areas at the office of the employer. They had different uniforms. And as the dissent in the subsequent decision by the National Labor Relations Board itself found, you'd otherwise have 615 people driving around without supervision. And in addition to that, the one interesting but key piece that they also determined was the issue of preventability. They would go to an accident scene and make the finding as to whether or not the accident was preventable. That's just like a traffic ticket. You get so many of those and you're going to lose your job. And while we didn't have the case law to support it because the hearing eventually ended there, the finding of preventability can lead to discharge, just as the other issues do with regard to non-performance or poor performance, unsafe acts, and other similar things. There was multiple areas in the record where both supervisors specified that they could relieve a driver. If they in their discretion find that the driver is not safe to proceed, they could relieve that driver either because of misconduct or because of their capacity. In this case, though, once it got to the NLRB, the NLRB moved the goalposts. And suddenly, the employer had to not only show that they were supervisors for engaging in factors and events and decisions and independent judgment associated with Section 211, but the National Labor Relations Board then said, well, wait a minute, your evidence is vague. We're going to hold you to a new vagueness standard, never before seen in NLRB cases. Well, you're vague. Well, what do you mean? Well, then they held us to another standard saying you've got to bring in a whole bunch of other people to talk about how other cases led to discipline or didn't lead to discipline. Well, if the NLRB keeps moving the goalposts, it may be impossible for any employer to ever show that a group of people who otherwise should be excluded from participation because of the conflict of interest associated with it clearly need to be shown as supervisors. We looked at it also from the standpoint of the National Labor Relations Board, and this is in our brief, has a double standard. When the NLRB wants to find somebody to act as an agent of the employer as a supervisor, it doesn't take anything, especially in cases involving alleged unfair labor practices. In those cases, the National Labor Relations Board comes back and says, oh, you look like you had the appearance of a supervisor, therefore you must be a supervisor. We cite those cases in our brief. In addition, one of the road supervisors also testified that he appeared on behalf of the employer at an unemployment hearing in an effort to protest the receipt of unemployment by one of the employees based upon his supervisory discipline of that employee. In this case, the NLRB wants to not only hold us to the standard of the section 211 plus, but they want us to do it in a fashion where it's both belts and suspenders. Not only do we have to prove that they are supervisory, but you have to prove that they're supervisory plus, and we just think that's so far afield. The Schnucks case within this circuit, as well as the analysis that took place in Beverly, we believe support our view. And we believe that the board's holding is not supported by substantial evidence. The evidence was uncontroverted. The regional director got it right. Dissenting member got it right, and we believe this court can also get it right. I defer the remainder of my time. You may. We'll leave it in the bank for rebuttal. And we'll hear from Mr. Casserly first for the board. Is that how you want to proceed? And then Mr. Taylor or the other way around? Yes, Your Honor. I'll go first. All right. Mr. Casserly, we'll hear from you. Good afternoon, and may it please the court. I'd like to just start by explaining what the standard is here. Because under the National Labor Relations Act, it's true that an employee is considered a supervisor and exempt from the act's protection if the employee has the authority to discharge, among other issues, among other authorities that are at issue here. Well, and to discipline. Just a second. Mr. Foster, would you put your microphone on mute, please, while you're not speaking? Go ahead, Mr. Casserly. Sure. But discipline under the National Labor Relations Act does not mean what a lot of people colloquially might call discipline. There's plenty of case law, including from this court, going back decades, showing that a mere warning, even if it's written, is not considered discipline within the meaning of the act. Because in and of itself, a warning doesn't affect employees' terms and conditions of employment. And so to show discipline, the employer has to show something more than that, or the party stating that these employees are supervisors has to show something more than a mere warning, oral or written. So there's no question in this is not whether the two road supervisors who testified thought that they had the authority to orally counsel somebody or even write down an infraction. That's not what the question is. The question is whether their authority and whether what they did counts as discipline under the NLRA. And here, we only have one example in the record of any written report that the type of discipline that they were talking about. And it's pretty clear from that example that this isn't discipline under the National Labor Relations Act. There's one road observation report in the record. It's an observation report. It has a checklist that goes through various things that could be done wrong by the operator and has a space for the road supervisor's signature at the bottom. It's merely a report. And there's a long line of precedent finding that mere repertorial authority is not supervisory. In other words, to be a supervisor, it's not enough to just be the person who says, okay, this is misconduct, and I'm going to write it down and put it in your file. You also need to be the person who then decides what the punishment is going to be for that misconduct. And here, again, we have just this one isolated example of a road observation report. And that just does not show any kind of discipline on it. It includes no disciplinary recommendation. It's a mere report of what happened. The same is true of preventability determinations, which are the only other piece of evidence in the record. There's two of them, an incident report and an accident report. In the accident report, the road supervisor simply wrote down what the road supervisor thought happened. There's no evidence for that or the road observation report about what happened to the employee after, especially there's no evidence about whether the road supervisor made any disciplinary recommendation. Now, under the Act, it is possible for an employer to show through a progressive discipline policy that an oral warning counted as a first step in discipline and would automatically be used in a future discipline, such that even an oral warning could count. But here, we have no evidence. We have two collective bargaining agreements that purport to set out progressive disciplinary policies, but we have no evidence that any of these reports were made under those policies. One of the CBAs that issue states that every time there's discipline meted out to a unit member, that there has to be notice to the union. We have no notice to the union that these are discipline. There's no future, there's no suspension or discharge of an employee that mentions a road observation report. There's no written warning issued to any employees that mentions any of these things. And so the board reasonably concluded here that what we have shown is that there's a group of employees here who are somewhere between the line level employees and the people who decide what discipline is going to them. They're the engineers of the operation, perhaps the road supervisors. They go out on the roads and they report what is happening, but they have no authority to discipline these employees, or at least on this record, it hasn't been shown that they have any authority to do and take any action that the board considers to be discipline. And that is why Mr. Foster's point that both road supervisors said, well, we have the authority to discipline isn't really relevant here. It's not their call whether they have that authority. Both of them clearly thought that merely writing down what an employee had done counted as discipline when it's clear under the act that that doesn't constitute discipline. And so the question isn't whether they testified that they could discipline. The question is whether they showed, whether Transdev showed that these people have that authority. And that's just not, on this record, the board determined that that's true. I'll also briefly address the 2 other pieces of evidence that Mr. Foster pointed to. First, he pointed to testimony at an arbitration hearing, which, first of all, Mr. Jackson, the road supervisor who testified at an arbitration hearing, also stated that that arbitration hearing was actually about a different employer and an employee who did not work for Transdev. So this is not something that was, so the board discounted it for that reason as it has nothing to do with this case. And it wasn't determined that that was the same, that the conditions of those road supervisors were the same as the ones that Transdev employees either. The other piece of evidence he pointed to was an unemployment hearing. And it's true that a road supervisor testified at an unemployment hearing about a preventability determination the road supervisor made. But that doesn't establish supervisory authority. That was merely unemployment hearings are fact-finding hearings, and an employee can testify about facts that they observed. And that's what the road supervisor was testifying about, the facts of the case and what he observed. There was nothing, nothing in this record indicates that the road supervisor was the one who determined that because of that preventability issue that the road, that the driver at issue would be discharged. There's nothing about that. All the road supervisor did there was make the preventability determination, and presumably somebody else made the discharge decision. There's also no testimony in the record from anybody other than these two road supervisors, any higher authority to say, okay, these road observation reports might say that they're just observation reports, but actually I treat that as discipline within the meaning of either of these collective bargaining agreements. There's nothing there. So all we have to work on are these written and oral counselings that there's no reason to believe that they have any role in discipline within the meaning of the act. Let me interrupt. We have, what name should we give them? Are they mere functionaries or minions? You call them eyes and ears, but do they have any title other than road supervisor? Road supervisor is their formal title, your honor. What's in a name? What's in a name? I guess in Wonderland, you can give them any name you want, but it's what they do that makes a difference. Are they mere functionaries? I'm not sure what you mean by mere functionary. The board's position is that they're employees. I guess that's obvious, but at what level are they an employee? They would be, so the act excludes say line level foremen who have no authority over the terms and conditions of employment of the people who work under them. They could be seen as sort of that role or as, and it's actually the eyes and ears quote was from Transdev's reply brief. I suppose it would be pejorative to say that they were stool pigeons. Uh, I think so, your honor, but I mean, they had other authorities too, but yeah, I mean, they're, they're, they're employees who have served a very important function, uh, which is to What is their working relationship to the people whom they are supervising? The work that they do is they are there to look at these vans and to make sure that everything on the van is properly done. In other words, that the seatbelts are on, that the van is in working order, that the, um, that the actual operator of the van is putting the cone out, uh, when making pickups and those sorts of things, and to report any errors, uh, to management through these road observation reports. Their other job is to investigate. Actually, do they actually ever observe, say a driver not wearing a seatbelt? Yes, your honor. Would they have the authority to tell the driver to put on the seatbelt? Uh, yes, they can tell them to put on the seatbelt, but simply ad hoc instructions like that also do not count as supervisory authority in this case. And again, the issue here is discipline. Um, unless the court doesn't have any further questions, I see I'm running low on time, so I will cede that to the union. Oh, actually, it's sorry. The clock is off. I think I have seven minutes. Is that right? Judge Colleton, you're muted. I'm sorry. You're down to one minute, and you may cede that to Mr. Taylor if you wish. I'll do so. Thank you, your honor. Let me also mention that there's a lot, there was quite a bit of static coming through your microphone, and if you, uh, make another argument in another court, you might want to test it and see if you can eliminate that. I didn't want to interrupt you because we could hear the substance, but I don't know if the microphone is on your, on your, uh, in front of you rubbing against your necktie and causing static or what the problem is, but. I'm sorry, your honor. For future reference, you might want to examine that. Mr. Taylor, we'll hear from you. Thank you. May it please the court, your honors. I appreciate the opportunity to argue today. I have very brief remarks to make. I think the presentations of my fellow advocates were on point and largely adequate, but there are a couple of points I want to bring to the court's attention. First, uh, the, uh, Mr. Kastler was absolutely correct in pointing out that there is on the record only one example of a purported discipline of an employee by a road supervisor, and that's found at, uh, section 313 of the, uh, record. Uh, your honors, I invite you to take a look at that page when you have a moment and you'll discover a couple of things about it. The, the instrument is mainly to advise the driver that a report is being made. That's clear. And the substance of the report is what happened. That's clear. There is nowhere on the document that indicates to the driver that the driver is being disciplined. There is some writing scrawled, and on the bottom of the exhibit, and I remember this from hearing because it was on the exhibit at the hearing, it is illegible. I could not tell what it was. The witness couldn't tell what it was. No one could tell what it was. What this tells the operator is that a report is being turned in. It doesn't tell the operator about the ultimate, uh, resolution. Uh, and I want to talk just a little bit, oh, and one other thing. I'll get to that in a minute. Let me, let me close that and then go to a Judge Wolman's question about the nature of this occupation. Uh, uh, your honor, uh, and I've practiced for a good bit of time in this area as, uh, as, uh, uh, as counsel earlier alluded, since motor coaches became the predominant form of transportation in the nation's cities, replacing streetcars during the 1950s, the occupation of a street supervisor or road supervisor has been an important feature of these operations. Someone needs to be able to get quickly to locations where, um, activity is going on, be it in an accident or a delay or an altercation or, um, a standoff, uh, something we're familiar with in Washington DC from time to time. And the, and the, uh, these folks are sent, dispatched to those locations to help restore order. That's one of the things they do. The other thing they do is they are spaced at various places where the service is being provided. And in this particular case, these are transportation, uh, for handicapped and elderly people. So they're usually stationed at places where they often go. Hospitals, shopping centers, um, uh, public buildings, courthouses, and they watch and observe what is happening as they come in. Uh, and they also, when a driver is new or is unsure how to operate, they'll counsel and help the operator do what they're supposed to do, ask them to buckle their seatbelt. They, they direct them, for example, to put a cone a little bit further from the bumper. They may assist when they're there. If a patron has difficulty getting on or getting off, sometimes there are actually patrons, and I don't want to go into too much about this, but there are patrons who are difficult to transport and the driver pulls over and calls and asks for assistance and a road supervisor is sent. They're extremely important. They're not many in number, but they're very important. They do not, however, discipline and they don't discipline on the spot. You can imagine, uh, Judge Wolman indicated the problem of being a, uh, a snitch. If they came across as a snitch or as somebody who was there to discipline or there to control, they would not be able to do their job effectively. They instead report what they observe and then supervision, true supervision, undertakes, um, discipline. That is expressed in the collective bargaining agreements themselves. In the record at 246 and 7 and 271 and 2 are the provisions of those collective bargaining agreements. They set forth who does discipline and that establishes how the operator and the union knows discipline has occurred and it's not the street supervisor. In one case, it's the general manager and in the other it's the general manager or designee and notice has to be sent to the union when there has been discipline. That happened in no cases on record here. These are classic road supervisors present in the industry since beginning and they are not supervisors within the act as the board has held repeatedly. So what are those two provisions you 246 and 7 and 271 and 2? That's where discipline and disciplining authority is defined in the two applicable collective bargaining agreements so that a driver and their union would know that discipline has happened. There is no example of either of those happening by any street supervisor ever. And do those two provisions you just cited specify the role of the road supervisor? No, they specify the role of the person who's administering discipline and it's not the road supervisor. What page then specifies the duties and authority of the road supervisors? That is not in the collective bargaining agreement. The petition here is to put them in a different separate bargaining agreement. So they're not spelled out in the collective bargaining agreement but let me give you a quick example. 271 and I think this is the ATU agreement. Yes, it's the ATU agreement and 271 section 10.1b says the respective general manager his or her designee shall give a fair and impartial hearing to employees that shall include corrective interviews through the disciplinary process. In A, all disciplinary processes shall be performed by the general manager or their designee. That's how an employee knows they're being disciplined. The parties have agreed to that. This was an employer exhibit. Your honor, I believed at the hearing and believe now that that was conclusive. And there's no indication that these road supervisors are designees? Is that your view? Never. They have never been designated by the general manager or anybody else. I have a question I have to ask Mr. Casserly. Maybe I'll give him his 30 seconds back but I'd like to ask if Mr. Casserly is still there. I can't see him. I'm here, your honor. Why is a case regarding the proper classification of supervisors in Washington, D.C. and the surrounding areas litigated in the 8th circuit? Your honor, under the National Labor Relations Act, under Section 10F of the Act, the unagreed party can petition anywhere that they do business for review of a board order. And so, although the home circuit, you know, if we were going for enforcement here, if we were petitioning the court, we would have to go in D.C. or in the 4th circuit. They have chosen to go in the 8th circuit here. Transdev is a large multinational corporation that does business everywhere so they can pick wherever they want. For purposes of jurisdiction or venue or both? That's a venue clause, your honor. Is there a transfer provision that's available to the board if it thinks that the case occurred in the locale where it arose? The board's position is no, your honor. There is no transfer. There's no transfer provision in the Act, certainly. And the board's position is that if there is statutory jurisdiction and that the venue clause is met, that the court does not have any authority to transfer it. We have had courts that disagreed with us and agreed with us on that. I believe the 9th circuit follows our precedent on that and the D.C. circuit does not. But yes, there's no specific transfer provision in the Act. You're saying some courts, though, have found they have authority inherent or otherwise to transfer? Yeah, I think I'm not entirely sure. This wasn't an issue in this case, your honor, so I would have to brush up to be sure. But I believe a couple of courts have transferred cases when there's some question as to whether venue is met. So when we oppose venue, instead of resolving the motion, some courts transfer it, which hypothetically, if you think about it, is sort of a finding that they have the authority to transfer it. That's happened in the 5th circuit a couple of times, I know. I don't think there's really any published opinions discussing that at length, although, yeah, I think the only published opinions have come when a union petitions for review somewhere other than where the employer petitions for review and then the competing petitions go to the multidistrict panel. There is a 6th circuit case called Brentwood that has some discussion of this, including what seems to be an assertion of authority to transfer. But I guess the board's view is that, well, I understand what the board's view is on that. Thank you. Mr. Foster, we'll hear from you in rebuttal. Thank you, Your Honors. Just to make use of my time here, if the panel would look at the employer's reply brief, starting at page 5, 6, 7, 8, and 9, you'll see it's replete with individual specific quotes in the transcript as to what supervisory indicia is represented by the of the two road supervisors. And in that long list on those four pages, you'll see that includes the counseling of employees, the telling of employees what their standard of behavior should be. They also have the discretion to say, look, I'm giving you a counseling, and it may not include a report that's going to go to the employee's file. There's unrebutted testimony that they know the reports did go to the employee's files. That's in the record. Now, what the union through Mr. Taylor and the NLRB may be arguing is, well, you didn't comply with the Teamster Agreement or parts of the agreement that say that there then has to be a report given to the employee. It doesn't say by the road supervisor. That clerical function of then turning discipline into a report to the union or to the employee is a clerical function contained in the collective bargaining agreement. The road supervisor's discussion with the employee is the discipline. That's the verbal coach, counseling, and verbal reprimand. That's the first step in the progressive discipline process. That way, when the union argues that the employee hasn't had due process when he or she's later terminated or suspended or in any other way treated differently than they want to be, the employer can say, well, you were, in fact, given coaching counseling by the road supervisor on this first day. That was the first step in the progressive discipline policy. And then after that, we had multiple reports that you continued to disregard your coaching and counseling by your road supervisor, which led to your suspension or discharge. That's how progressive discipline works. That's how the union wants it to work. And there's nothing more complicated, and there's nothing more to it than that. The road supervisor has the authority. The road supervisors testified they have the authority. The road supervisors testified that people recognize them as road supervisors with the authority, the discipline, and coach and counsel employees and what they're doing. That's in the record already. It's unrebutted. I don't know what else to point to except the fact that the record is replete. It is unrebutted. There's no other evidence that was thrown in. And to have brought in paper on top of what the road supervisors testified to makes no sense. Again, it's belts and suspenders. We've proved by the road supervisor's testimony that they're If I bring in paper, all it's going to do is create 10 more days of hearing to show, well, how did this piece of paper get there, or how did it not get there, or what happened to this piece of paper? And it simply complicates the record unnecessarily. There was ample testimony, substantial testimony on the record that they were supervisory. And the regional director, who does this for a living every day, day in and day out, got it. He found that they were board went through some sophistry to find that they were, in fact, not supervisors, but something else. Well, if you look at member Mishmarra's dissent, he points out what really is going on. And that dissent is illuminating, it's instructive, and it makes good points. And that's what brought us here today. I'm sure these pages are in your brief, but would you recite those pages you started your rebuttal argument with? Absolutely. If you look at the employer's reply brief on page five, six, seven, eight, and nine, five to nine, it's succinct. And if I could point out something as well, the discipline is in the discussion with the employee. That's what the employee knows, that the force of his employer is directing him to do something correctly, no longer doing it incorrectly, but doing it correctly. Notice to the union, therefore, after, in this discipline context of the contract, is a clerical function. That road supervisor gets the point across when he tells that driver, look, stop. Stop driving for a minute, and let me tell you what you're doing wrong. And the record is replete with those kinds of examples by the two supervisors who testified under oath. What do you have to say about why this case is in the Eighth Circuit? Well, the same question was asked, Your Honor, back in 1988 in Cromeloy American Corporation, 873 F2nd 1150. And that's the case that Judge Woolman participated on as well. And that's because the parent corporation of that particular employer in 1988 had its offices in St. Louis, and the dredging was taking place in the L.A. Harbor. In this case, Transdev has operations here in St. Louis, where I am. I've been doing the labor relations work for them through labor employment work since 1982. And I'm here as well. But they have a function, a large function, where they transport students, parents, vendors for Washington University here in St. Louis. And they also provide ancillary charter service beyond that. And that's a large operation that they have here in St. Louis, and that became the basis for doing it here. Because it meets the board's requirement, so long as you're doing business within that circuit, within that area, you can properly request it. What about our authority to transfer the case if we think it's unrelated to our circuit? Well, it isn't unrelated to your circuit because it's a question of the board's poor application, wrongful application of its standard. This is a statute that covers the entire country. And each circuit has a role in making sure that the board is correctly guided on following the statute that it's supposed to be enforcing. There's no reason to punt it. There's no reason to send it elsewhere. The case can be heard. The case can be resolved here. As so many have been done throughout the United States and throughout the history of the national relations boards, enforcement through the federal courts. As Mr. Cassidy pointed out, the board doesn't even take a position on it. So basically you think the statute allows forum shopping? I wouldn't call it forum shopping, Your Honor. Well, it allows it. I mean, maybe that wasn't your mindset here, but I think that's what you're saying, that if you think you've got a better chance in a certain circuit, if you're a national company, you can take a case from Florida and bring the suit in New York or wherever you want. Is that the impetus? Is that the implication of the argument? I don't believe so. But if that's the case, the board could easily find a way to issue a regulation on it. The board could easily issue some proposed rules on it and the Congress can take it up and amend the statute. Well, but I'm asking whether the courts have authority to transfer if they think that parties are forum shopping and bringing cases in places that are totally unrelated to the underlying dispute. We don't believe that's appropriate given the history of the cases being heard throughout the United States. The National Labor Relations Act covers our country shore to shore. It covers every state, every jurisdiction, and it shouldn't matter what court of appeals the issue is raised in. Every court of appeals has the obligation to keep the National Labor Relations Board on the right path, regardless of where the case was heard. What's the citation you mentioned, 873 F 2nd? What was the rest of the citation there? 1150, 1989. All right. We'll look at that. I do think there's some authority from other circuits that are other circuits that claim authority to transfer cases in this or similar situations or the court feels that it should be litigated elsewhere. Your Honor, if I may, I'm old enough to recall when the bulk of the NLRB appeals were in the D.C. circuit. There was a lot of back and forth about that, about how to balance them geographically and make them more local. I don't remember what the outcome is, Your Honor. I'm sorry. This is the first this issue has come up before me, but I'd like to take a hack at it and see what I can find out about the outcome of that. It seems like the D.C. circuit itself did something to help ameliorate the problem, but if I may, I'll check it out as well, and if I can have an opportunity, I'll send something to the court if I find it that helps eliminate the problem. Well, the statute on its face does say that the petition may be brought anywhere where the NLRB would like it to be, but there's, I think, still a remaining question whether a court has to always accept the case or whether transfer might be appropriate in certain circumstances. Anyway, Mr. Foster, did you have anything else on the merits of the case? No, we just believe there was not been any basis for the board to have done what it did when it reversed its own regional director and then took off to find additional standards of vagueness and requirement of additional written documentation and some other standard that's not in Section 211, and we think this case has implications for every effort to try and either establish supervisors in Missouri, Arkansas, North Dakota, South Dakota, Minnesota, etc., again. It's not clear to me that the court would welcome something from me. Do you want me to do this? Well, it's a little bit out of order. Is it on the venue issue or on the merits? Venue issue. With my colleague's permission, since I brought this up a little bit out of order, I'll let you respond to that venue question. I think I'll do it very quickly, a week or so. Oh, you mean you want to send us something in writing? Is that the question? That's right. I'm not looking to address the court at all. Well, I don't want to leave it that if the court wants to hear from the parties on that, we'll enter an order inviting supplemental submissions. Otherwise, we'll leave the record as it is now. That way the panel can confer and decide if anything further is warranted. If you don't hear from us, you can just assume the case is submitted on the present record. Okay. Very well. Thank you to all three of you gentlemen for your arguments today. The case is submitted and the court will file an opinion in due course.